**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| PAUL SPECHT, as adminstrator of the estate of Daniel Specht, | | |
| Plaintiff, | | No. 16-CV-1012-LRR |
| vs. | | **ORDER** |
| KUBOTA TRACTOR CORPORATION et al., | | |
| Defendants. | | |

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*    *PROCEDURAL HISTORY*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

        *A.*      *Specht Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
              *1.*    *Designed for lubricating oil*   . . . . . . . . . . . . . . . . . . . . . **3**
              *2.*    *Lubrication after ten hours of operation* . . . . . . . . . . . . . . **6**
              *3.*    *"State of the art" evidence*   . . . . . . . . . . . . . . . . . . . . . . . **7**
              *4.*    *Lubrication with WD-40* . . . . . . . . . . . . . . . . . . . . . . . . . **8**
              *5.*    *Earmuffs on control lever* . . . . . . . . . . . . . . . . . . . . . . . . **9**
              *6.*    *WD-40 as unreasonable lubricant*   . . . . . . . . . . . . . . . . . **10**
              *7.*    *Lack of maintenance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
        *B.*      *Kubota Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
              *1.*    *Industry standards*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
              *2.*    *"Self-lubricating bearings"* . . . . . . . . . . . . . . . . . . . . . . . **16**
              *3.*    *Untimely supplemental opinions* . . . . . . . . . . . . . . . . . . . **17**
              *4.*    *Inadequate instructions*   . . . . . . . . . . . . . . . . . . . . . . . . **19**

*IV.*   *CONCLUSION*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

# I. INTRODUCTION

The matters before the court are Plaintiff Paul Specht's "Motion in Limine" ("Specht Motion") (docket no. 39) and Defendants Kubota Tractor Corporation, Kubota Corporation, Kubota Manufacturing of America Corporation and Kubota Industrial Equipment Corporation's (collectively, "Kubota") "Motion in Limine" ("Kubota Motion") (docket no. 40).

# II. PROCEDURAL HISTORY

On July 2, 2015, Specht filed a Petition (docket no. 3) in the Iowa District Court for Allamakee County, alleging eight claims against Kubota and two claims against Defendant Gary's Tractor & Implement, Inc. ("Gary's"). Specht alleges: (1) strict liability design defect against Kubota; (2) negligent design against Kubota; (3) failure to warn against Kubota; (4) post-sale failure to warn against Kubota; (5) breach of implied warranty of fitness for a particular purpose against Kubota and Gary's; (6) breach of express warranty against Kubota and Gary's; (7) breach of implied warranty of merchantability against Kubota; and (8) conduct warranting punitive damages against Kubota. On October 19, 2015, Kubota filed an Answer (docket no. 4). On March 24, 2016, Specht dismissed his claims against Gary's with prejudice. *See* Dismissal (docket no. 5). On April 15, 2016, Kubota removed the case, bringing it before the court. *See* Notice of Removal (docket no. 2). On June 6, 2017, the court entered summary judgment on Counts 3-8 of the Petition. *See* June 6, 2017 Order (docket no. 38) at 26. Trial on the remaining design defect claim, encompassing Counts 1 and 2, is currently scheduled to begin on August 7, 2017. *See* Trial Management Order (docket no. 18) at 3. On June 8, 2017, Specht filed the Specht Motion. On the same date, Kubota filed the Kubota Motion. On June 15, 2017, Kubota filed a Resistance to the Specht Motion ("Kubota Resistance") (docket no. 42). On the same date, Specht filed a Resistance to the Kubota Motion ("Specht Resistance") (docket no. 43). On June 29, 2017, the parties appeared before the

court for a final pretrial conference, at which time the parties presented argument with respect to the Specht Motion and the Kubota Motion. *See* June 29, 2017 Minute Entry (docket no. 49). The matters are fully submitted and ready for decision.

## III. ANALYSIS

The instant action arises from the death of Daniel Specht ("Daniel"), which occurred while he operated a tractor and loader designed and manufactured by Kubota. Daniel used the loader with a pallet fork attachment to perform farm-related tasks. In July of 2013, while using the tractor and loader to move hay bales, the control lever responsible for raising and lowering the loader became stuck in the raised position. When the loader reached the fully raised position, the hay bale that had been positioned on the loader fell onto Daniel, resulting in his death.

### A. Specht Motion

In the Specht Motion, Specht requests a court order excluding evidence of the following: (1) that the control lever joint was designed and/or intended to be lubricated with lubricating oil; (2) that the control lever joint had not been lubricated within ten hours of operation at the time of the accident causing Daniel's death; (3) expert testimony that the control lever joint complied with industry standards and/or was considered "state of the art"; (4) expert testimony that the control lever joint had not been lubricated with WD-40 lubricant; (5) that ear muffs positioned over the control lever may have contributed to the accident; (6) that WD-40 was an unreasonable lubricant for use in the control lever joint; and (7) that Daniel generally failed to maintain the tractor and loader at issue. *See* Specht Motion at 1-2. Kubota resists the Specht Motion in its entirety. *See generally* Kubota Resistance. The court shall address each item in turn.

### 1. Designed for lubricating oil

Specht argues that evidence from Kubota witnesses that the control lever joint at issue was designed and intended to be lubricated with oil must be excluded. "Brief in

Support of Specht Motion" ("Specht Brief") (docket no. 39-1) at 1-2.

In support of exclusion, Specht argues that Kubota's experts have no "factual basis" to testify that the loader was designed to be lubricated with oil because they did not personally design the loader and have not spoken with the product designers. *See id.* at 1. However, regardless of whether Kubota's experts have direct or firsthand knowledge of the intentions of the product designers, they may nevertheless provide expert testimony on the matter if they have a reliable basis to support such testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation . . . . premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." (internal citation omitted)); *see also* Fed. R. Evid. 702 (stating that a qualified expert may provide opinion testimony if it "is based on sufficient facts or data" and is the product of "reliable principles and methods" that are "reliably applied . . . to the facts of the case"). In his expert report, Kubota Expert Ronald Brass describes his extensive experience working with "controls, linkages, connections, bushings and other components, including those designed for and needing lubrication" as they pertain to agricultural equipment like the loader at issue. Exhibit J to Kubota Motion (docket no. 40-11) at 3. In light of this experience, the court finds that Brass has demonstrated "sufficient specialized knowledge to assist the jurors" on these matters. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 723 (8th Cir. 2015) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999)); *see also Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (describing the court's "gatekeeper" role with respect to expert witness testimony).

Specht next argues that the testimony regarding lubricating oil must be excluded because it was not timely disclosed in Kubota's expert reports. Specht Brief at 2. Federal Rule of Civil Procedure 26(a)(2) requires parties to provide expert reports including,

4

among other items, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Kubota's deadline for submitting its expert reports was November 30, 2016. *See* Order Extending Deadlines (docket no. 17) at 1; *see also* Fed. R. Civ. P. 26(a)(2)(D) (providing that parties "must make these disclosures at the times and in the sequence that the court orders"). "If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Specht is incorrect in claiming that Kubota failed to timely disclose expert opinions that the control lever joint was designed to be lubricated with oil. On November 30, 2016, Brass submitted his expert report, in which he states that: (1) the control lever joint can "easily be lubricated with an oil can with a spout," Exhibit J to Kubota Motion at 8; (2) "[t]he use of a grease zerk in this area [] would attract more chaff and debris than lubricating oil," *id.* at 11; and (3) "[t]here is neither high pressure nor heavy load on this pivot point to suggest the need for a heavy lubricant such as grease," *id.* These combine to provide a sufficient statement of Brass's opinion that the control lever joint was designed to be lubricated with oil. Additionally, on November 30, 2016, Kubota's expert Todd Bechtel submitted his expert report, in which he exclusively references oil lubrication when discussing the control lever joint. *See* Exhibit I to the Kubota Motion (docket no. 40-10) at 4. While less explicit than Brass's report, this too provides notice of Bechtel's opinion that the control lever joint is designed to be lubricated with oil. Because such opinions were timely and sufficiently disclosed by the court-ordered deadlines, they are not subject to exclusion under Rule 37.

Finally, Specht argues that the evidence regarding lubricating oil must be excluded because other evidence conflicts with the conclusion that the control lever joint was designed to be lubricated with oil. *See* Specht Brief at 2. The mere presence of conflicting

evidence does not provide sufficient grounds to exclude evidence. The jury is entitled to hear conflicting evidence and to resolve any such conflicts to reach its verdict. *See, e.g.*, *United States v. Davis*, 449 F.3d 842, 846 (8th Cir. 2006) ("Although the jury heard conflicting testimony, conflicts in the evidence are for the jury to resolve . . . ."). Therefore, exclusion is not warranted on these grounds.

For the foregoing reasons, the court shall deny the Specht Motion with respect to exclusion of evidence that the control lever joint was designed to be lubricated with oil.

### 2. *Lubrication after ten hours of operation*

The warnings and instructions corresponding to the loader at issue instructed operators to lubricate the control lever joint after every ten hours of operating the loader. *See, e.g.*, Specht Appendix in Support of Resistance to Motion for Summary Judgment ("Specht Appendix") (docket no. 26-2) at 286. Specht argues that evidence that Daniel failed to lubricate the control lever joint in ten-hour increments of operation must be excluded. Specht Brief at 3. Specifically, Specht argues that Kubota's experts lack particular knowledge as to whether the control lever joint was lubricated when Daniel had the loader serviced in June of 2012, how many hours Daniel operated the loader between the date of service and his death and whether the loader was operated during the period between Daniel's death and the parties' testing of the loader in 2014. *Id.*

As the court noted above, Kubota's experts need not have firsthand knowledge of a particular fact—for example, whether Daniel actually lubricated the control lever joint in the instructed increments—in order to express their opinion on the topic, so long as they have a reliable basis to support such testimony. *Daubert*, 509 U.S. at 592; Fed. R. Evid. 702. Bechtel and Brass's expert reports contain information establishing reliable bases for their opinions about Daniel's lubrication practices. *See* Exhibit I to Kubota Motion at 2 (Bechtel report indicating that during two inspections of the loader, "[s]ignificant rust, corrosion, and pitting was observed on the lever and the bushing, indicating a long-term

lack of lubrication in the joint"); Exhibit J to Kubota Motion at 8 (Brass report determining that "[d]ue to the nature and the extent of the rusting, corrosion and debris on the lever and in the controller bushing, it is evident that Mr. Specht would have experienced the observed control lever malfunction well before the day of his accident. . . . Further, there is no indication that any attempt was made to restore the loader control to its proper function before the accident occurred"). Based on the observations contained in their expert reports, the court finds that Bechtel and Brass have demonstrated "sufficient specialized knowledge to assist the jurors" on the relevant matters. *Am. Auto.*, 783 F.3d at 723 (quoting *Kumho Tire*, 526 U.S. at 156). Accordingly, the court shall deny the Specht Motion with respect to exclusion of evidence that Daniel failed to lubricate the control lever joint in ten-hour increments of operation.

### 3.      *"State of the art" evidence*

Iowa law recognizes a "state of the art" defense in design defect cases, which provides that "a percentage of fault shall not be assigned to [a defendant] if they plead and prove that the product conformed to the state of the art in existence at the time the product was designed, tested, manufactured, formulated, packaged, provided with a warning, or labeled." Iowa Code § 668.12(1). "State of the art" evidence is distinct from mere "industry standard" evidence: industry standard "refers to what was being done in the industry; state of the art refers to what feasibly could have been done." *Falada v. Trinity Indus., Inc.*, 642 N.W.2d 247, 250 (Iowa 2002) (quoting *Chown v. USM Corp.*, 297 N.W.2d 218, 221 (Iowa 1980)). Although conformance with industry standard does not satisfy the statutory defense of § 668.12, *cf. id.*, both categories of evidence are relevant to a design defect claim. *See* Restatement (Third) of Torts: Products Liability § 2, cmt. d ("The defendant is . . . allowed to introduce evidence with regard to industry practice that bears on whether an alternative design was practicable. Industry practice may also be relevant to whether the omission of an alternative design rendered the product not

reasonably safe.").

Specht argues that Brass should "not be able to testify whether the [control lever joint] met the state of the art or met industry standards" because such testimony would not be reliable or relevant. Specht Brief at 4. Specifically, Specht argues that Brass must be prevented from testifying on such matters because he is unfamiliar with a particular term ("self-lubricating journal bearing") used to describe the control lever joint and because he failed to produce specific information about the control apparatuses and/or joints of other loaders. *Id.* Specht provides no context from which to conclude that Brass's inability to identify a single term or produce particular information during a deposition prevents him from having reliable opinions regarding the relevant industry as a whole. Indeed, Brass is a registered professional engineer, a member of the American Society of Agricultural and Biological Engineers and the Society of Automotive Engineers, was employed for over thirty years as a product design engineer at Deere & Company and specifically states his familiarity with various standards and practices "as they relate to the various forms of off-road equipment." *See* Exhibit J to Kubota Motion at 2-4. In light of Brass's qualifications and experience, the grounds stated by Specht do not justify exclusion of Brass's testimony regarding the state of the art. Accordingly, the court shall deny the Specht Motion with respect to exclusion of testimony by Brass regarding the state of the art of loaders like the one at issue in this case.

### 4. *Lubrication with WD-40*

Specht argues that evidence indicating that Daniel did not lubricate the control lever joint with WD-40 should be excluded. Specht Brief at 4-5. Specifically, Specht argues that Kubota's experts failed to perform testing to determine "the relationship between using WD-40 on the bushing and rust, corrosion, pitting, and time" and that they previously testified that they could not conclusively state that Daniel did not use WD-40 to lubricate the control lever joint. *Id.* at 5. Specht's arguments with respect to WD-40 are analogous

to his arguments with respect to lubrication within the instructed ten-hour increments, discussed above. As with that issue, the court finds that the purported flaws identified by Specht do not warrant exclusion of evidence that Daniel did not lubricate the control lever joint with WD-40. Both Bechtel and Brass inspected the control lever joint at issue and identified "a long-term lack of lubrication in the joint," Exhibit I to Kubota Motion at 2, and a "failure to maintain and lubricate the controller," Exhibit J to Kubota Motion at 6. Because WD-40 is a lubricant, it follows that Bechtel and Brass observed a lack of WD-40 lubrication in the control lever joint, indicating that Daniel failed to apply WD-40 to the joint. Based on the observations contained in their expert reports, the court finds that Bechtel and Brass have demonstrated "sufficient specialized knowledge to assist the jurors" on the relevant matters. *See Am. Auto.*, 783 F.3d at 723 (quoting *Kumho Tire*, 526 U.S. at 156). Accordingly, the court shall deny the Specht Motion with respect to exclusion of evidence that Daniel did not apply WD-40 to the control lever joint.

### 5. *Earmuffs on control lever*

Specht argues that evidence suggesting that the presence of earmuffs wrapped around the control lever may have contributed to the accident at issue must be excluded. Specht Brief at 5-6. In support of his argument, Specht emphasizes that Brass testified during his deposition that he accepted as accurate the results of third-party testing, which determined "that the earmuffs did not sufficiently restrict the lever travel to be the cause of the accident." *Id.* at 5 (quoting Brass Deposition Exhibit (docket no. 39-3) at 12). Kubota resists exclusion on the grounds that, in his expert report, Brass indicated the need to rely on "speculation . . . to reach a conclusion" about the cause of the accident and that the Allamakee County Sheriff also identified the earmuffs as a potential cause of the accident. Kubota Resistance at 9.

As the court has noted numerous times above, Kubota's experts need not have firsthand knowledge of a fact to express their opinions on the topic, so long as they have

a reliable basis to support such testimony. *Daubert*, 509 U.S. at 592; Fed. R. Evid. 702. However, in his expert report, Brass effectively disclaimed any reliable basis for determining that the earmuffs contributed to the accident—affirmatively stating that he relied only on "speculation" to opine that "it is possible" that the earmuffs "could have" affected the function of the control lever. Exhibit J to the Kubota Motion at 9. Brass's deposition demonstrates no firmer basis for determining that the earmuffs contributed to the accident, but merely indicates that it would have been feasible for the earmuffs to affect the control lever if positioned in a particular manner. Exhibit K to the Kubota Motion (docket no. 42-1) at 4. This degree of speculation falls far short of the "sufficient facts or data" that must support an expert's opinion. *See* Fed. R. Evid. 702(b). As such, any testimony on this matter lacks a sufficient scientific basis and is, therefore, unreliable and shall be excluded. Accordingly, the court shall grant the Specht Motion with respect to exclusion of evidence that the earmuffs wrapped around the control lever may have contributed to the accident.

### 6.    *WD-40 as unreasonable lubricant*

Specht argues that evidence that it would have been unreasonable for Daniel to use WD-40 as a lubricant for the control lever joint must be excluded. Specht Brief at 6. In support of his argument, Specht points out that Bechtel testified during his deposition that WD-40 would be an appropriate lubricant for the control lever joint. *Id.* at 6. In essence, Specht requests that the court bind Bechtel to his deposition testimony and prevent him from testifying contrarily at trial. Specht cites no legal authority to support a pre-trial ruling excluding testimony that is contrary to prior deposition testimony. Indeed, the Federal Rules of Evidence contemplate the admission of contrary testimony and provide a procedure for impeaching a witness in the event the witness contradicts prior deposition testimony. *See* Fed. R. Evid. 613 (providing a mechanism for impeaching a witness with evidence of prior inconsistent statements); *see also United States v. Allen*, 540 F.3d 821,

825 (8th Cir. 2008) ("[E]vidence [of prior inconsistent statements] is permitted when the witness is afforded an opportunity to explain or deny the earlier statement, the opposing party has the opportunity to interrogate the witness thereof, and the evidence is material to the substantive issues of the case."). As such, testimony that WD-40 is an unreasonable lubricant shall not be excluded. In the event Bechtel contradicts his deposition testimony, Specht will have the opportunity to impeach him on cross-examination pursuant to the requirements of Rule 613. Accordingly, the court shall deny the Specht Motion with respect to exclusion of evidence that WD-40 would be an unreasonable lubricant for the control lever joint.

### 7.    *Lack of maintenance*

In his expert report, Bechtel identified that, in addition to the control lever joint, numerous other components of the tractor and loader—including loader joints equipped with grease zerks—demonstrated a lack of regular maintenance. *See* Exhibit I to Kubota Motion at 5-7. Specht argues that this evidence must be excluded because only the control lever joint contributed to the accident, making Daniel's poor maintenance of other components not relevant or, alternatively, the probative value of such evidence is substantially outweighed by the risk of unfair prejudice. Specht Brief at 7 (citing Fed. R. Evid. 402, 403).

Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (formatting omitted). Relevant evidence is presumed to be admissible. *See* Fed. R. Evid. 402. "The threshold for relevance is quite minimal." *United States v. Farlee*, 757 F.3d 810, 821 (8th Cir. 2014) (quoting *United States v. Holmes*, 413 F.3d 770, 773 (8th Cir. 2005)).

In his design defect claim, Specht alleges only that the control lever joint was defectively designed. To succeed on his claim, Specht must prove, among other elements,

that the design defect caused Daniel's death. *See Lovick v. Wil-Rich*, 588 N.W.2d 688, 700 (Iowa 1999). Evidence of Daniel's poor maintenance practices makes it more likely that the lack of lubrication of the control lever joint (which both parties' experts acknowledge as the cause of the accident) was the result of Daniel's generally poor maintenance practices, and not the result of any design defect. Specht must also prove that a reasonable alternative design would reduce the foreseeability of harm, as compared to the defective design. *See Nationwide Agribusiness Ins. Co. v. SMA Elevator Constr. Inc.*, 816 F. Supp. 2d 631, 657 (N.D. Iowa 2011). With respect to this element, Specht identifies the installation of a grease zerk at the control lever joint as a reasonable alternative design that would reduce the foreseeability of harm. *See* Kubota Appendix in Support of Motion for Summary Judgment ("Kubota Appendix") (docket no. 19-2) at 116 (report from Specht's expert, Dr. George Wandling). However, evidence that Daniel failed to regularly lubricate loader joints already equipped with grease zerks makes it less likely that the alternative design would reduce foreseeable harm because it indicates that Daniel would fail to lubricate the control lever joint even if it was equipped with a grease zerk. For these reasons, evidence that Daniel failed to maintain other components of the tractor and loader is probative of material issues and shall not be excluded. Additionally, the sheer volume of maintenance deficiencies identified by Bechtel establishes Daniel's habit of poor maintenance, rendering such evidence further admissible under Federal Rule of Evidence 406. *See* Fed. R. Evid. 406 (stating that evidence of a person's habit is admissible to prove that the person acted in accordance with the habit); *cf. also Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 881 (8th Cir. 2015) (affirming admissibility of evidence of a person's unreliable correspondence with clients to rebut claim that the same person adhered to a reliable practice for mailing letters). Accordingly, the court shall deny the Specht Motion with respect to exclusion of evidence of Daniel's general lack of maintenance of the tractor and loader.

### B.  Kubota Motion

In the Kubota Motion, Kubota requests a court order excluding evidence of the following: (1) photographs or testimony describing the appearance of Daniel's body after his death; (2) Daniel's personal character, reputation or community involvement; (3) the emotional responses of Daniel's family following his death; (4) expert testimony regarding industry standards; (5) unqualified opinions from non-expert witnesses; (6) incidents of malfunctions occurring in loader models distinct from the loader at issue; (7) references to "self-lubricating bearings"; (8) expert testimony that was not included in the expert report required under Federal Rule of Civil Procedure 26; and (9) references to the inadequacy of the instructions and warnings relating to the loader.  *See* Kubota Motion at 2.  Specht does not resist the Kubota Motion with respect to exclusion of items (1),[1] (2), (3), (5) and (6).  *See* Specht Resistance at 1-2.  Accordingly, the court shall grant the Kubota Motion with respect to those items.  The court shall address the remaining items in turn.

#### 1.  Industry standards

Kubota argues that evidence from Dr. Wandling regarding industry standards must be excluded.  Kubota Brief at 7-9.  Kubota argues that exclusion is warranted because Dr. Wandling's reliance on the standards was untimely disclosed and because the standards are not sufficiently specific or relevant to the design defect claim at issue.  *See id.*

In its Reply in Support of the Motion for Summary Judgment, Kubota previously argued that certain of Dr. Wandling's opinions—including his reliance on industry

---

[1] Specht qualifies its non-resistance to item (1) by arguing that witnesses must be permitted to "provide factual testimony regarding what they observed when they arrived at the scene of the incident."  Specht Resistance at 1.  The court agrees in principle.  Witnesses may certainly testify as to their observations of the scene of the accident, but they shall not linger on or provide any degree of detail as to the appearance of Daniel's body when discovered.  Such detailed descriptions are not relevant to any material issue and, additionally, are unduly prejudicial to Kubota.  *See* Fed. R. Evid. 401, 403.

standards—were untimely and subject to being stricken under Federal Rule of Civil Procedure 37(c). *See* Reply in Support of the Motion for Summary Judgment (docket no. 34) at 4-14. The court declined to strike the challenged opinions because it found that Specht's untimely disclosure of the opinions was substantially justified. *See* June 6, 2017 Order at 11-12. As the court shall describe in more detail below, the court stands by its prior ruling and exclusion is not warranted on these grounds.

The industry standards that Kubota challenges relate to "Technical Publications for Agricultural Equipment," Exhibit D to Kubota Motion (docket no. 40-5) at 1, "Safety for Agricultural Field Equipment," *id.* at 3, and "Safety Signs," *id.* at 7. Kubota argues that these standards "do not contain sufficiently specific requirements or provisions relating to the particular design defect claimed by [Specht]." Kubota Brief at 8. It is the duty of the court to determine "whether a proffered industry standard is applicable to a given set of facts." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 716 (Iowa 2016) (Hecht, J., concurring in part and dissenting in part) (citing *Hansen v. Abrasive Eng'g & Mfg., Inc.*, 856 P.2d 625, 628 (Or. 1993)). Factors relevant to an industry standard's applicability to a given case include: (1) whether the witness testifying regarding the standards has prior familiarity with the standards; (2) whether the standards apply to the same industry as the industry at issue in the case; (3) whether the standards are "applicable to the type of problem that caused plaintiff's injury"; (4) whether the standards impose duties on the same class of entities as the defendant; and (5) whether the standards were in effect at the time of the plaintiff's injury. *See Aller v. Rodgers Mach. Mfg. Co.*, 268 N.W.2d 830, 840-41 (Iowa 1978) (affirming the exclusion of various industry standards based on these considerations). Initially, the court notes that there is no apparent dispute that Dr. Wandling is familiar with the challenged standards, that the standards apply to the agriculture industry, that they impose duties on the designers and manufacturers of agricultural equipment (like Kubota) or that they were in effect at the time of Daniel's

death.  Therefore, the court shall focus its analysis on whether the standards apply to the type of malfunction that caused Daniel's death.

The court finds that the "Safety for Agricultural Field Equipment" standards are clearly relevant to the case at issue.  Such standards promote "a reasonable degree of personal safety for operators and other persons during the . . . servicing of agricultural field equipment."  Exhibit D to Kubota Motion at 3.  One such standard requires that "[a]ccess shall be provided to areas requiring . . . routine service . . . as specified or described in the operators' manual.  This access shall be so designed that these procedures can be readily carried out."  *Id.* at 4.  This standard is directly relevant to the central issue of this case: whether the design of the control lever box prevented Daniel from accessing and applying lubricant to the control lever joint as instructed.  Therefore, the "Safety for Agricultural Field Equipment" standards are relevant and shall not be excluded.  However, the court finds that the remaining two standards—"Technical Publications for Agricultural Equipment" and "Safety Signs"—are not relevant.  These standards address "the development of technical publications," *id.* at 1, and "uniformity of safety signs," *id.* at 7.  As such, the standards relate to the written materials instructing Daniel to lubricate the control lever joint.  The theory underpinning Specht's design defect claim is not that Daniel was unaware that he must lubricate the control lever joint, but rather that the design of the control lever joint prevents adequate lubrication.[2]  While the content of instructions and warnings may be relevant to a design defect claim, *see* Restatement (Third) of Torts: Products Liability § 2, cmt. f (listing "the instructions and warnings accompanying the product" as relevant factors), it does not follow that industry standards regarding instructions and warnings are applicable to the alleged defect that prevented Daniel's access to the control lever joint.  The court finds the relationship between the instructions

---

[2] The court granted summary judgment in favor of Kubota on Specht's inadequate instructions and warnings claim.  *See* June 6, 2017 Order at 22-26.

and warnings standards to be too attenuated to warrant admission under the framework applied in *Aller*. Therefore, evidence regarding the "Technical Publications for Agricultural Equipment" and "Safety Signs" standards shall be excluded.

For the foregoing reasons, the court shall grant the Kubota Motion with respect to exclusion of the "Technical Publications for Agricultural Equipment" and "Safety Signs" industry standards relied on by Dr. Wandling, and the court shall deny the Kubota Motion with respect to exclusion of the "Safety for Agricultural Field Equipment" relied on by Dr. Wandling.

### 2. *"Self-lubricating bearings"*

Kubota argues that evidence regarding "self-lubricating bearings," also referred to as "self-lubricated bearings," must be excluded. Kubota Brief at 13-14. Kubota argues that exclusion of such evidence is warranted because there is no indication that the control lever joint is, in fact, a self-lubricating bearing, making such evidence not relevant. *See id.* Specht resists exclusion on grounds that a Kubota design document contains the following language with respect to the control lever joint: "EQUIVALENT TO SELFLUBRICATING JOURNAL BEARING." Specht Resistance at 3 (quoting Design Document (docket no. 43-1) at 1).

The court finds that evidence relating to self-lubricating bearings is not relevant. First, the court notes that the design document identified by Specht does not state that the control lever joint is, in fact, a self-lubricating bearing but, instead, states that the control lever joint is "equivalent to" a self-lubricating bearing. *See* Design Document at 1. The equivocation of the design document on this matter is particularly significant because Dr. Wandling provides no other basis for his opinion that the control lever joint is a self-lubricating bearing. *See* Specht Appendix at 8-9 (Dr. Wandling Affidavit). Second, even if it could be fairly assumed that the control lever joint is a self-lubricating bearing, Dr. Wandling does not sufficiently explain the importance of such a fact. Dr. Wandling states

that such bearings "are intended for applications that may require little to no lubrication by the operator." *Id.* at 9. However, in his expert report, Dr. Wandling implicitly acknowledges the need for lubrication of the control lever joint. *See* Kubota Appendix at 115 (describing that "the bearing surfaces rusted and corroded due to lack of grease introduced into the joint"). In short, Specht has not established a reasonable basis for Dr. Wandling's opinions regarding self-lubricating bearings, rendering such evidence not relevant. As such, the court finds that Dr. Wandling has failed to demonstrate "sufficient specialized knowledge to assist the jurors" on the subject of self-lubricating bearings. *See Am. Auto.*, 783 F.3d at 723 (quoting *Kumho Tire*, 526 U.S. at 156). Accordingly, the court shall grant the Kubota Motion with respect to exclusion of evidence regarding self-lubricating bearings.

### 3. *Untimely supplemental opinions*

Kubota argues that various untimely supplemental opinions from Dr. Wandling, filed in the Specht Appendix, must be excluded. *See* Kubota Brief at 14-18. Kubota argues that, contrary to the court's analysis in the June 6, 2017 Order, the untimeliness of the filing of Dr. Wandling's supplemental opinions was not substantially justified because Specht's counsel contributed to the circumstances giving rise to the untimeliness. *See id.* at 15-16.

As the court noted in its June 6, 2017 Order:

> Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004) ("Rule 37 does not provide for mandatory sanctions, and the district court may find that a party's failure to include a witness in the . . . Rule 26[] disclosures was substantially justified or harmless."). This rule provides the court with "wide" discretion to decide whether to exclude

17

> evidence that is untimely disclosed. *Carmody v. Kan. City Bd.*
> *of Police Comm'r*, 713 F.3d 401, 405 (8th Cir. 2013) (quoting
> *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)).

June 6, 2017 Order at 10-11 (omissions and alterations in original). In the June 6, 2017 Order, the court concluded that the untimely disclosure of Dr. Wandling's rebuttal opinions in the Kubota Appendix was substantially justified because timely disclosure was rendered impossible by the late-scheduled depositions of Kubota experts, which occurred after the rebuttal opinion deadline had passed. *Id.* at 11-12. Kubota now contends that Specht's counsel affirmatively requested the dates scheduled for the depositions of Kubota's experts. *See* Kubota Brief at 15-16; *see also* Exhibit H to Kubota Motion (docket no. 40-9). According to Specht, Specht's counsel only requested the post-deadline dates because he did not receive certain discovery from Kubota's counsel until such a time that a late deposition became necessary. *See* Specht Resistance at 3-4. The court declines to interject itself into this long-passed discovery dispute.

Whatever the allocation of fault between parties' counsel, the court finds that exclusion of the untimely evidence is not warranted. "When fashioning a remedy [under Rule 37], the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692. Even if the court accepts that Specht's counsel is solely at fault for the untimeliness, the remaining considerations weigh against exclusion. Particularly, to the extent that Kubota experienced any surprise or prejudice at the time Dr. Wandling's supplemental opinions were originally filed on April 25, 2017, the extent of such surprise is now insubstantial in light of the fact that the opinions were disclosed nearly four months in advance of the scheduled trial date. *Compare* Specht Appendix (filed on April 25, 2017), *with* Trial Management Order (setting trial date of August 7, 2017). Relatedly, given the significant length of time

between the filing of the supplemental opinions and the trial date, the untimeliness resulted in no disruption to the "order and efficiency" of trial. Lastly, it is beyond dispute that Dr. Wandling is the central witness to Specht's case, making his opinions of the utmost importance. The exclusion of such opinions risks the creation of "a one-sided trial." *See Bonds v. District of Columbia*, 93 F.3d 801, 809 (D.C. Cir. 1996), *cited with approval in Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011); *see also Wegener*, 527 F.3d at 692 ("[T]he district court's discretion narrows as the severity of the sanction or remedy it elects increases."). When viewing all of the circumstances—most notably the length of time of time between the untimely filing and the eventual trial date—the court finds that, even if the untimeliness was not substantially justified, it was nevertheless harmless. In any event, the categorical exclusion[3] of Dr. Wandling's untimely supplemental opinions is not warranted. Accordingly, the court shall deny the Kubota Motion with respect to exclusion of Dr. Wandling's untimely supplemental opinions.

### 4. *Inadequate instructions*

Kubota argues that any evidence regarding the inadequacy of the operator instructions for the loader must be excluded. Kubota Brief at 18-19. Kubota argues that exclusion is necessary because, in its June 6, 2017 Order, the court granted summary judgment in Kubota's favor on Specht's claim of inadequate instructions and warnings. *Id.* Specht argues that Kubota has indicated its intention to argue that Daniel failed to adhere to the instructions relating to lubrication of the control lever joint, thereby rendering the adequacy of the instructions relevant. Specht Resistance at 5.

In its June 6, 2017 Order, the court determined that Specht generated a genuine dispute of material fact as to the inadequacy of Kubota's instructions and warnings for the

---

[3] As noted above, certain individual opinions contained in Dr. Wandling's supplemental report—particularly, evidence of two industry standards and "self-lubricating bearings"—shall be excluded notwithstanding the harmlessness of the untimely filing.

loader, but that he failed to generate a genuine issue of material fact that such inadequacies caused Daniel's death. *See* June 6, 2017 Order at 22-26. Despite granting summary judgment on the claim based on the causation element, the court nevertheless expressed concern that "the content regarding the control lever joints is lacking to a degree that would frustrate an operator's ability to comply with the instructions and warning's directives." *Id.* at 24. As such, despite proceeding to trial on a design defect claim only, limited evidence regarding the loader's lubrication instructions is nevertheless relevant to demonstrate that the alleged design defect, and corresponding risk of harm, cannot be alleviated by the instructions as written. *See* Restatement (Third) of Torts: Products Liability § 2, cmt. f (listing "the instructions and warnings accompanying the product" as factors relevant to the availability of a reasonable alternative design and to the potential reduction in foreseeable harm). Due to this relevance, categorical exclusion of all evidence regarding the loader instructions is not appropriate. However, evidence regarding the *inadequacy* of the instructions shall be excluded because the probative value of such evidence is substantially outweighed by the danger of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. Therefore, any evidence regarding the loader instructions shall be limited to drawing connections between the content of the instructions and the design of the control lever joint and surrounding apparatus. Such evidence must not comment on the adequacy of the instructions. The focus of the trial shall remain on the alleged design defect. Accordingly, the court shall grant the Kubota Motion to the extent it seeks exclusion of evidence relating to the inadequacy of the loader instructions, and the court shall deny the Kubota Motion to the extent it seeks the categorical exclusion of all evidence relating to the loader instructions.

## IV. CONCLUSION

In light of the foregoing, the Specht Motion (docket no. 39) is **GRANTED IN PART** and **DENIED IN PART** and the Kubota Motion (docket no. 40) is **GRANTED IN**

**PART** and **DENIED IN PART**.

Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order. If during the presentation of evidence a party believes that a prohibited subject has become relevant or that the necessary predicates for admission have been established, the party may request an opportunity to argue for admissibility of the evidence outside the presence of the jury. Each ruling in this Order is binding on all parties.

**IT IS SO ORDERED.**

**DATED** this 6th day of July, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA